UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY D. MURPHY,

        Plaintiff,

                                  CASE NO. 2:07-CV-15248-DT
v.                               JUDGE BERNARD A. FRIEDMAN
                                  MAGISTRATE JUDGE PAUL KOMIVES
CARLA GRENIER, BRENDA BONNEE, and
W.HODGES, Mailroom Clerks at KCF; GORDON
NEWLAND, Inspector at KCF; CHERYL
SOELTNER, RICHARD COTTLE, and RANDALL
MASKER, Mailroom Clerks at URF; T. VALONE,
Librarian at SMF; MR. McINTIRE AND MR.
URBAN, Property Room Workers at SMF; F. WINN,
RN, and D. SVENSEN, RN, Nurses at SMF; C.
BERRY and C. SELLERS, Mailroom Clerks at SMF;
IN THEIR INDIVIDUAL AND PERSONAL
CAPACITIES, Jointly & Severally,

        Defendants.

_____/

## REPORT AND RECOMMENDATION ON: (1) DEFENDANTS' MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT (docket #25); (2) PLAINTIFF'S COUNTER MOTION FOR PARTIAL SUMMARY JUDGMENT (docket #32); (3) DEFENDANTS' MOTION TO STAY DISCOVERY (docket #30); and (4) PLAINTIFF'S MOTION FOR LEAVE TO AMEND (docket #35)

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      A.    *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      B.    *The Parties Cross-Motions for Summary Judgment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
            1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
            2.    *Legal Mail Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
            3.    *Retaliation Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
            4.    *Medical Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
            5.    *Media Mail Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
            6.    *Qualified Immunity* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
      C.    *Plaintiff's Motion for Leave to Amend* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
            1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
            2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
      D.    *Defendants' Motion to Stay Discovery* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
      E.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

I.     <u>RECOMMENDATION</u>: The Court should grant in part and deny in part defendant's motion for summary judgment.  Specifically, the Court should grant the motion with respect to the retaliation and media mail claims asserted in Counts II and IV of plaintiff's complaint, and should deny the motion with respect to the legal mail and Eighth Amendment medical claims asserted in Counts I and III of plaintiff's complaint.  The Court should also deny plaintiff's cross-motion for partial summary judgment.  The Court should grant in part and deny in part plaintiff's motion for leave to amend.  Specifically, the Court should grant the motion to the extent plaintiff seeks to add new, supplemental claims against defendants Berry and Sellers, and deny the motion in all other respects.  Finally, the Court should deny defendants' motion to stay discovery.

II.    <u>REPORT</u>:

A.     *Procedural Background*

Plaintiff Timothy Murphy, a state prisoner, commenced this *pro se* civil rights action on December 10, 2007, alleging violations of 42 U.S.C. § 1983 and the First, Sixth, Eight, and Fourteenth Amendments to the Constitution.  Plaintiffs claims arise from his incarceration at three separate prisons: the Kinross Correctional Facility (KCF), the Chippewa Correctional Facility (URF), and the Standish Maximum Correctional Facility (SMF).  Plaintiff names fourteen Michigan Department of Corrections (MDOC) officials as defendants.  The KCF defendants are Record Office Supervisor Carla Greiner, Personnel Management Assistant Brenda Bonee, and General Office Assistant Williams Hodges (all identified by plaintiff as mailroom clerks), as well as Inspector Gordon Newland.  The URF defendants are Mailroom Supervisor Cheryl Soeltner and General Office Assistants Randall Masker and Richard Cottle.  The SMF defendants are General Office Assistants Cynthia Sellers and Cheryl Berry, Librarian Anthony Valone, Storekeepers Shawn

McIntire and Randall Urban, and Nurses Davis Svensen and Frederick Winn.

Plaintiff's complaint asserts four causes of action.  In Count I, plaintiff alleges that KCF defendants Grenier, Bonnee, and Hodges, and URF defendants Soeltner, Masker, and Cottle, violated his First and Sixth Amendment rights by opening outside his presence, censoring, and failing to forward his legal mail.  In Count II, plaintiff alleges that defendants retaliated against him for filing grievances and assisting other inmates with legal matters in various ways.  Specifically, plaintiff alleges that:  URF defendants Soeltner, Masker, and Cottle retaliated against him by refusing to forward legal and personal mail; that KCF defendant Newland retaliated against him by failing to honor a verbal agreement he had made with plaintiff to have plaintiff transferred out of segregation; that SMF defendants McIntire and Urban retaliated against him by depriving him of his television and word processing typewriter; and that SMF defendant Valone retaliated against him by failing to make legal photocopies.  In Count III, plaintiff alleges that SMF defendants Winn and Svensen were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment by failing to respond to his complaints of back injury in a reasonable and timely manner.  Plaintiff also alleges that defendant Svensen's failure to provide adequate care was in retaliation for plaintiff having filed grievances against health care staff.  Finally, in Count IV plaintiff alleges that SMF defendants Berry and Sellers violated his First Amendment rights by preventing him from sending uncensored mail to news media.  Plaintiff also alleges that these actions were taken in retaliation for his filing of grievances.

Currently pending before the Court are four motions filed by the parties.  On June 2, 2008, defendants' filed a motion to dismiss and/or for summary judgment.  Defendants argue that they are entitled to dismissal or summary judgment because: (1) plaintiff has failed to allege the personal

involvement of defendants Grenier, Bonce, Soeltner, Masker, Cottle, Sellers, and Berry; (2) plaintiff has failed to demonstrate that defendant Newland took an adverse action against him that was motivated by plaintiff's constitutionally protected conduct; (3) plaintiff has not sufficiently alleged personal involvement or retaliatory motive with respect to defendants McIntire and Urban; (4) plaintiff has not exhausted his remedies with respect to defendants McIntire, Urban, and Valone; (5) plaintiff has failed to establish retaliatory motive with respect to defendant Valone; (6) plaintiff's claims against defendants Svensen and Winn fail as a matter of law; and (7) defendants are entitled to qualified immunity. Plaintiff filed a response to defendants' motion on August 1, 2008.

The second motion pending before the Court is plaintiff's counter-motion for partial summary judgment, filed on July 14, 2008. In this motion, plaintiff seeks summary judgment in his favor on his legal mail claims against defendants Grenier, Bonnee, and Hodges and on his retaliation claims against defendants Berry, Sellers, Soeltner, Masker, Cottle, and McIntire. Third, on June 16, 2008, defendants filed a motion to stay discovery based on their assertion of a qualified immunity defense. Finally, on January 20, 2009, plaintiff filed a motion for leave to amend the complaint. Defendants filed a response to this motion on February 23, 2009.[1]

B.    *The Parties Cross-Motions for Summary Judgment*

1.    *Legal Standard*

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."

---

[1]Although I have authority to hear and determine plaintiff's motion for leave to amend and defendants' motion to stay discovery pursuant to 28 U.S.C. § 636(b)(1)(A), the resolution of these motions is intertwined with the resolution of the parties' summary judgment motions. Accordingly, I include them in this Report rather than resolving them by Order.

FED. R. CIV. P. 56(c).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248).  In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact.  Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325.  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue.  As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

5

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23;

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Thus, "[t]he

existence of a mere scintilla of evidence in support of the non-moving party's position will not be

sufficient; there must be evidence on which the jury could reasonably find for the non-moving

party."  *Sutherland*, 344 F.3d at 613.

       2.    *Legal Mail Claims*

      Plaintiff alleges that KCF defendants Grenier, Bonnee, and Hodges violated his First and

Sixth Amendment rights by opening his legal mail outside his presence.  *See* Compl., ¶ 92.

Plaintiff likewise alleges that URF defendants Soeltner, Masker, and Cottle opened his legal mail

outside his presence.  *See id.*, ¶ 93.  More specifically, plaintiff alleges:

      36.    On or about May 24th or 27th 2005, Plaintiff received legal mail from his attorney, Neil C. Williston, that was opened and inspected by KCF Mailroom staff outside Plaintiff's presence.

      37.    On or about July 30th or August 3rd 2005, Plaintiff received legal mail from his attorney, Neil C. Williston, that was opened and inspected by KCF Mailroom staff outside Plaintiff's presence.

      38.    On or about March 25th or 28th 2006, Plaintiff received legal mail from his attorney, Neil C. Williston, that was open[ed] and inspected by KCF Mailroom staff outside Plaintiff's presence.

           * * * *

      42.    On April 16, 2007 Plaintiff received legal mail from his attorney, Neil C. Williston, that was postmarked March 22, 2007 and addressed to Plaintiff at KCF which was opened and inspected outside Plaintiff's presence by Mailroom staff at KCF or URF.

Compl., ¶¶ 36-38, 42.[2]  Defendants contend that they are entitled to summary judgment because

---

    [2]As discussed in more detail in connection with plaintiff's retaliation claim against defendant Newland, plaintiff was transferred from KCF to URF on March 25, 2007, following an escape attempt.

plaintiff has failed to sufficiently allege their personal involvement in the opening of his legal mail.

In *Kensu v. Haigh*, 87 F.3d 172 (6th Cir. 1996), the Sixth Circuit recently noted that "the sanctity of legal mail has long been recognized." *Id.* at 174. The court went on to note:

> Both the Supreme Court and this Circuit have repeatedly held that a prisoner has some First Amendment rights to receive mail, subject to the right of prison officials to open a prisoner's incoming mail in accordance with uniformly applied policies deemed appropriate to maintain prison security. That case law has also acknowledged that the opening of "legal mail" should generally be in the inmate's presence in accordance with appropriately drafted and uniformly applied regulations.

*Id.* (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)). It is equally true, however, that merely negligent opening of legal mail does not state a § 1983 claim. *See Barker v. Sowders*, No. 98-5506, 1999 WL 427170, at *1 (6th Cir. June 15, 1999); *Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir. 1989); *Hinderliter v. Hungerford*, 814 F. Supp. 66, 68 (D. Kan. 1993); *Bryant v. Winston*, 750 F. Supp. 733, 734 (E.D. Va. 1990); *Williams v. McClain*, 708 F. Supp. 1086, 1089 (W.D. Mo. 1989). *See generally*, *Daniels v. Williams*, 474 U.S. 327, 330-33 (1986) (negligence on part of public officials insufficient to state constitutional civil rights claim); *Davidson v. Cannon*, 474 U.S. 344, 347 (1986) (same).

Defendants do not argue that they are entitled to summary judgment on the underlying merits of plaintiff's legal mails claims. That is, they do not argue or present evidence that plaintiff's mail was not in fact opened outside his presence, was not legal mail, or was not properly identified as legal mail. Rather, defendants argue only that plaintiff's allegations that his legal mail was opened by "KCF Mailroom staff" or "URF Mailroom staff" are insufficient to establish their individual, personal involvement in the alleged deprivation of plaintiff's rights. The Court should disagree.

7

It is well established that, "[t]o recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right." *Diebitz v. Arreola*, 834 F. Supp. 298, 304 (E.D. Wis. 1993). In other words, in order to state a claim under § 1983 "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights. Liability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (per curiam).

It is true that plaintiff does not specifically allege which defendant opened which piece of legal mail. This is hardly surprising, however, in light of the fact that plaintiff could have no way of knowing which mail room employees were responsible for opening his mail when he prepared and filed his complaint. At the pleading stage, plaintiff's allegations that the individually named defendants are employed in the mail room and that mail room staff opened his legal mail are sufficient to allege personal involvement. As another Judge of this Court has explained in similar circumstances:

> Plaintiff's action, which alleges that a sizable portion of his legal mail was improperly opened outside his presence, sufficiently alleges unconstitutional practices against all 12 mail room employees for the purposes of pleading. The original complaint, referring to present Defendants as "unknown mailroom employees," was later supplemented with the names of the individual staff members. While Plaintiff does not specify which staff member opened which envelope on what occasion, as discussed in Section A., he has properly pled constitutional violations. Further, jail personnel charged with handling prisoner mail had an exclusive ability to commit the alleged improprieties. Thus, that the alleged constitutional violations were committed by mail-handling staff can be reasonably inferred for the purposes of pleading.
>
> In addition, requiring Plaintiff to state at present which staff member improperly opened which piece of legal mail on what day places him in an untenable situation-his claim that his legal mail was opened outside his presence cannot go forward because the violation itself prevents him from naming the specific improprieties committed by the individual defendants.

8

*Merriweather v. Zamora*, No. 04-CV-71706, 2006 WL 2711809, at *6-*7 (E.D. Mich. Sept. 21, 2006) (Rosen, J., adopting Report of Whalen, M.J.); *cf. Brown v. Sikes*, 212 F.3d 1205, 1209 n.4 (11th Cir. 2000); *Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998); *Duncan v. Duckworth*, 644 F.2d 653, 656 (7th Cir. 1981).

Because defendants move for summary judgment on plaintiff's legal mail claims solely on the basis that plaintiff has failed to allege personal involvement, and because plaintiff's allegations at the pleading stage are sufficient to establish the named defendants' personal involvement, the Court should deny defendants' motion with respect to these claims.

However, plaintiff is not thereby entitled to summary judgment in his favor. Where "the crucial issue is one on which the movant will bear the ultimate burden of proof at trial, summary judgment can be entered only if the movant submits evidentiary materials to establish all of the elements of the claim or defense." *Stat-Tech Liquidating Trust v. Fenster*, 981 F. Supp. 1325, 1335 (D. Colo. 1997); *see also*, *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991); *Resolution Trust Corp. v. Gill*, 960 F.2d 336, 340 (3d Cir. 1992). In other words, in such a case the movant "must satisfy both the initial burden of production on the summary judgment motion–by showing that no genuine dispute exists as to any material fact–and the ultimate burden of persuasion on the claim–by showing that it would be entitled to a directed verdict at trial." William W. Schwarzer, et al., *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 477-78 (1991). Here, plaintiff has not presented sufficient evidence to establish each element of his legal mail claims as a matter of law. Most importantly, there remain genuine issues of material fact with respect to which defendants, if any, actually opened his mail. Further, there is no evidence in the record apart from plaintiff's affidavit which establishes that plaintiff's legal mail

9

was, in fact, opened outside his presence and that the opening of his legal mail was more than mere negligence. Thus, plaintiff is not entitled to summary judgment in his favor.

       3.    *Retaliation Claims*

       Plaintiff next brings a number of retaliation claims. All of his retaliation claims are based on his allegedly protected conduct of either filing grievances or providing legal assistance to other inmates. Specifically, plaintiff alleges that: (1) URF defendants Soeltner, Masker, and Cottle retaliated against him by failing to forward legal and personal mail sent to him at URF after his transfer to SMF and refusing to process his written request for a Step II grievance form, *see* Compl., ¶¶ 100-07; (2) KCF defendant Newland retaliated against plaintiff by breaching an oral agreement Newland had made with him to transfer him out of segregation, *id.*, ¶¶ 108-10; (3) SMF defendants McIntire and Urban retaliated against him by depriving him of his television and word processing typewriter, *id.*, ¶¶ 111-16; (4) SMF defendant Valone retaliated against him by refusing to make legal photocopies, *id.* ¶ 117-19; (5) SMF defendant Svensen retaliated against him by refusing to provide adequate medical treatment, *id.*, ¶¶ 125-27; and (6) SMF defendants Berry and Sellers retaliated against him by failing to allow him to send uninspected mail to members of the media, *id.*, ¶¶ 133-35. In order to succeed on his retaliation claim, plaintiff must establish three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two - that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (plurality op.). However, if the "defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on

10

2:07-cv-15248-BAF-PJK   Doc # 39   Filed 03/04/09   Pg 11 of 26   Pg ID 589

summary judgment." *Id*. at 399.  While the adverse action inquiry is ordinarily a question of fact for the jury, some "adverse actions" are so *de minimis* that they fail to state a retaliation claim as a matter of law.  *See Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002); *Thaddeus-X*, 175 F.3d at 398-99.

Here, plaintiff's allegations satisfy the first two elements of the *Thaddeus-X* test.  However, he has failed to sufficiently allege a causal connection between the allegedly adverse actions taken against him and his engaging in protected conduct, *i.e.*, filing of grievances.  With respect to each retaliatory action taken by defendants, plaintiff merely alleges in conclusory fashion that the motive of defendants was to retaliate against him.  He provides no specific allegations, however, from which a retaliatory motive may be inferred.  Such "conclusory allegations of retaliatory motive unsupported by material facts will not be sufficient to state a claim under § 1983." *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (internal quotation omitted); *see also*, *Cox v. Jackson*, 579 F. Supp. 2d 831, 848 (E.D. Mich. 2008) (Rosen J., adopting Report of Komives, M.J.).  Accordingly, the Court should conclude that plaintiff's retaliation claims fail as a matter of law, and that defendants are entitled to summary judgment on these claims.

### 4.   *Medical Claims*

In Count III, plaintiff alleges that SMF defendants Winn and Svensen failed to provide adequate and timely medical care for his back injury.  *See* Compl., ¶¶ 123-24.  Specifically, plaintiff makes the following allegations with respect to his medical care:

> 69.   On July 7, 2007, Plaintiff re-injured his back and sent an "urgent" Health Care Request Form to SMF Health Services, complaining of severe back pain.  Plaintiff further explained how he originally injured his back in September 2006 and was treated for it.

> 70.   On July 11, 2007, Plaintiff was seen by SMF Health Care Nurse Frederick

11

Winn at which time Plaintiff explained that he was in excruciating pain and pleaded with him to see the doctor the following day.

71.     On July 12, 2007, Plaintiff spoke to the daily rounds nurse in his unit and pleaded with him to see the doctor or to ask the doctor to order pain medication.

72.     On July 14, 2007, Plaintiff again asked the daily rounds nurse to see the doctor because he was in pain.

        * * * *

74.     On July 16, 2007, Plaintiff sent another "urgent" Health Care Request to complain of his severe pain and asked to see the doctor.

        * * * *

78.     On July 19, 2007, Plaintiff again asked the daily rounds nurse to see the doctor or be given something for the pain.

        * * * *

80.     On July 25, 2007, Plaintiff again stopped the daily rounds nurse and pleaded to see the doctor or be given pain medication.

        * * * *

83.     On July 29, 2007, Plaintiff sent his third Health Care Request asking for treatment for his back injury and pain which SMF Health Care returned to him unprocessed, because Plaintiff gave the Request to his unit officer to deliver to Health Care.

84.     On August 3, 2007, SMF Health Care Nurse, D. Svensen, went to Plaintiff's cell to review Plaintiff's grievance about not being treated for his back injury and pain.  Defendant D. Svensen asked Plaintiff to sign off on the Grievance and indicated Plaintiff would see the doctor soon.  Plaintiff stated that he would sign it when he saw the doctor.  Defendant Svensen then stated, "If you sign off I'll make sure you see the doctor soon."  When Plaintiff refused, Defendant Svensen said, "It will be a while then, are you sure you don't want to sign off?"

        * * * *

87.     On August 12, 2007, Plaintiff sent yet another Health Care Request Form

12

asking to see the doctor and complaining about the pain he was having and loss of feeling in his left leg.

88.     On August 16, 2007, Plaintiff was seen by SMF Health Care Nurse D. Svensen, reference his 8/12/07 Request and Complaint about back injury/pain. Mr. Svensen told Plaintiff he would see the doctor on September 5, 2007. Plaintiff expressed his discontent and stated he could not wait that long. When Plaintiff demanded to see the doctor, Mr. Svensen stated, " . . . You'll see the doctor when you attitude improves."

89.     On August 21, 2007, Plaintiff was finally seen by a doctor who immediately ordered pain medication and further ordered a MRI and x-rays.

Compl., ¶¶ 69-72, 74, 78, 80, 83-84, 87-89.

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. In its purest sense, the Eighth Amendment proscribes cruel and unusual punishment meted out in a penal or disciplinary sense. In its application by the courts, the amendment actually protects a wide assortment of interests. It proscribes disproportionate punishments, *Weems v. United States*, 217 U.S. 349, 366-67 (1910), "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86 (1958) (plurality opinion). *See generally, Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986).

The Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). On the other hand, it does not permit inhumane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also, Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The amendment imposes affirmative duties on prison officials, "who must provide humane conditions of confinement; prison officials must

13

ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id*. (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).  If the offending conduct is not a criminal penalty, then it must reflect an "'unnecessary and wanton infliction of pain'" to come within Eighth Amendment's prohibition on cruel and unusual punishment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  Such claims must satisfy both an objective and a subjective test. *Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991).  Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994).  The plaintiff bears the burden of proving these elements by a preponderance of the evidence. *Brooks*, 39 F.3d at 127-28.

The objective prong asks whether the harm inflicted by the conduct is sufficiently serious to warrant Eighth Amendment protection. *McMillian*, 503 U.S. at 8-9; *Rhodes*, 452 U.S. at 349 (1981).  To satisfy this prong, the conduct must deprive the plaintiff of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 349.  The objective component is contextually driven and is responsive to "'contemporary standards of decency.'" *McMillian*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 103).

The subjective prong asks whether the officials acted with a sufficiently culpable state of mind; that is, was the conduct "wanton." *Wilson*, 501 U.S. at 302; *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993).  In determining whether an official acted wantonly, the court applies a "deliberate indifference" standard. *Wilson*, 501 U.S. at 302-03; *see Estelle*, 429 U.S. at 104-06. Under this "deliberate indifference" standard,

14

> a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.

*Farmer*, 511 U.S. at 847.  A prison official is not free to ignore obvious dangers to inmates, and may be liable even if he does not know the exact nature of the harm that may befall a particular inmate.  *Id*. at 843-44.  However, prison officials may escape liability if they show that they in fact did not know of the obvious risk to the inmate's health or safety, or knowing of it, they acted reasonably under the circumstances.  *Id*. at 844-45.

Plaintiff's claims that defendants denied medically necessary treatment are governed by these objective and subjective tests, as explained by the Supreme Court in *Estelle*, *supra*.  In *Estelle*, the Court held that "[r]egardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."  *Estelle*, 429 U.S. at 105.  Thus, a court faced with failure to treat claims has a two-fold inquiry: (1) does the plaintiff's complaint involve "serious illness or injury"?–*i.e*, the objective prong of the Eighth Amendment analysis; and (2) if so, were the defendants deliberately indifferent to this serious illness or injury?–*i.e.*, the subjective prong of the Eighth Amendment analysis.  *See generally*, *Durham v. Nu'Man*, 97 F.3d 862, 868-69 (6th Cir. 1996).  Defendants argue that they are entitled to summary judgment on both prongs of the deliberate indifference inquiry.  The Court should disagree.

With respect to the objective prong, plaintiff alleges in his complaint and avers in his affidavit that he was in extreme pain due to his back condition, and that his complaints were ignored by defendants for 45 days.  A prisoner's allegations that he "experienced serious physical pain over an extended period of time can rise to the level of a sufficiently serious medical condition under the Eighth Amendment."  *Dennis v. Milicevic*, No. 97 Civ. 7147, 1998 WL 474200, at *3 (S.D.N.Y.

Aug. 13, 1998) (citing cases).  It is true that plaintiff has not presented any objective medical evidence to support his assertions of pain, but this is neither surprising nor fatal in light of the fact that no discovery has yet been conducted.  Accordingly, the Court should conclude that plaintiff has presented sufficient evidence of an objectively serious medical condition to survive summary judgment.

Likewise, the Court should conclude that plaintiff's averments, at this stage of the litigation, are sufficient to create a genuine issue of material fact with respect to whether defendants were deliberately indifferent to his back pain.  To be sure, defendants Winn and Svensen aver that they examined plaintiff in a timely fashion and scheduled him for doctor visits within a couple days of his requests.  However, they have not provided any of plaintiff's medical records which would substantiate these allegations.  Plaintiff avers in his own affidavit that he did not receive medical treatment for 45 days, and that he did not see the doctor on the dates which defendants aver he was scheduled to see the doctor.  In the absence of any objective medical records to support their averments, the Court may not resolve the credibility contest created by the parties' competing affidavits.  If, as averred by plaintiff, defendants Winn and Svensen failed to provide plaintiff with medical care for his allegedly severe back pain for 45 days, plaintiff may be able to prove that defendants were deliberately indifferent to his serious medical needs.  Thus, as the record currently exists, the Court should conclude that plaintiff has raised a genuine issue of material fact with respect to his Eighth Amendment claims against defendants Winn and Svensen.

However, as with his legal mail claim, plaintiff is not entitled to summary judgment in his favor on his Eighth Amendment claims. Just as plaintiff's affidavit raises a genuine issue of material fact with respect to whether defendants Winn and Svensen were deliberately indifferent to his

serious medical needs, the defendants' affidavits raise a genuine issue of material fact that they were not deliberately indifferent. Thus, plaintiff is not entitled to summary judgment in his favor on these claims.

     5.    *Media Mail Claims*

In Count IV of his complaint, plaintiff alleges that SMF defendants Berry and Sellers violated his rights under the First Amendment by failing to allow him to send uncensored mail to an identified member of the news media. *See* Compl., ¶ 132. Specifically, he alleges that "[o]n July 17, 2007, [he] attempted to mail a confidential letter to a member of the news media, which SMF Mailroom staff refused to mail," and that "[o]n July 19, 2007, [he] alerted mailroom staff in writing of his right to send sealed and uncensored mail to the media and attempted to mail a sealed and confidential letter to a member of the news media which SMF Mailroom staff again refused to mail." Compl., ¶¶ 75, 77. The Court should conclude that defendants Berry and Sellers are entitled to summary judgment on this claim.

Plaintiff does not allege that defendants actually censored any letter which he attempted to send to media outlets. Rather, he contends that he has a constitutional right to send such mail not only uncensored, but confidentially without inspection by prison officials. However, a prisoner has no First Amendment right to send confidential communication to members of the media, and thus plaintiff's claim fails as a matter of law. Unlike legal mail, correspondence with members of the media is not afforded privileged status, and thus may be subjected to the same inspection rules a prison applies to regular incoming and outgoing mail. *See Singletary v. Stalder*, No. 01-30260, 2001 WL 1131949, at *1 (5th Cir. Sept. 20, 2001); *Smith v. Delo*, 995 F.2d 827, 831-32 (8th Cir. 1993); *Gaines v. Lane*, 790 F.2d 1299, 1305-07 (7th Cir. 1986). Accordingly, the Court should conclude

17

that defendants are entitled to summary judgment on this claim.

      6.    *Qualified Immunity*

Defendants also argue that they are entitled to summary judgment because they have qualified immunity from plaintiff's claims. As a general matter, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose behind qualified immunity is to protect public officials "from undue interference with their duties and from potentially disabling threats of liability." *Id*. at 806. In determining whether an official is entitled to qualified immunity, a court asks "whether the violation involved a clearly established rights of which a reasonable official would have known" such that the official's conduct "was objectively unreasonable in light of the clearly established constitutional right." *Feathers v. Ahey*, 319 F.3d 843, 848 (6th Cir. 2003); *see also*, *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Dickerson v. McClellan*, 101 F.3d 1151, 1157-58 (6th Cir. 1996). In determining whether a right is clearly established, a court looks first to the decisions of the Supreme Court, then to those of the Sixth Circuit, and finally to decisions of other courts. *See Dickerson*, 101 F.3d at 1157. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202. It is not enough for a general right–such as the right to adequate medical care–be established; the right must be established "in a more particularized . . . sense" relevant to the defendant's acts or omissions. *Id*. At the same time, the precise conduct at issue need not previously have been held unlawful, and conduct can violate clearly established law "even in novel factual circumstances." *Hope v. Pelzer*,

536 U.S. 730, 741 (2002). "[I]n an obvious case, [general constitutional] standards can 'clearly establish' the answer, even without a body of relevant case law." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004). Under *Brosseau*, as the Sixth Circuit has recently explained, a plaintiff may show that a defendant violated clearly established law by showing either that: (1) the violation was obvious under the general constitutional standards governing the asserted right; or (2) the defendant's conduct failed to adhere to a particularized body of precedent that governs the case. *See Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 2005) (discussing *Brosseau*, 543 U.S. at 199-200).

Defendants do not argue that the law they are alleged to have violated was not clearly established. Rather, their qualified immunity argument is limited to the argument that they are entitled to summary judgment on the merits of plaintiff's constitutional claims. Thus, they are not entitled to qualified immunity with respect to plaintiff's legal mail and Eighth Amendment claims, because genuine issues of material fact remain with respect to those claims.

C.      *Plaintiff's Motion for Leave to Amend*

1.      *Legal Standard*

Ordinarily, leave to amend a complaint or other pleading "shall be freely granted when justice so requires." FED. R. CIV. P. 15(a). Generally, courts have shown "a strong liberality . . . in allowing amendments under Rule 15(a)." *Tahir Erk v. Glenn L. Martin Co.*, 116 F.2d 865 (4th Cir. 1941). As the Supreme Court has stated:

> In the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.–the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright

19

refusal to grant the leave without any justifying reason appearing for the denial is not
an exercise of discretion; it is merely abuse of that discretion and inconsistent with
the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962).  Thus, "[w]hen there is a lack of prejudice to the

opposing party and the amended complaint is obviously not frivolous, or made as a dilatory

maneuver in bad faith, it is abuse of discretion to deny [the] motion." *Hurn v. Retirement Fund Trust*

*of Plumbing, Heating & Piping Indus. of S. Cal.*, 648 F.2d 1252, 1254 (9th Cir. 1981).  In short,

courts should construe liberally Rule 15(a) in favor of permitting amendment.  *See Greenberg v. Life*

*Ins. Co. of Va.*, 177 F.3d 507, 522 (6th Cir. 1999); *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir.

1987).

Nevertheless, as *Foman* makes clear there are certain situations in which it is appropriate to

deny leave to amend.  One such circumstance is when amendment would be "futil[e]." *Foman*, 371

U.S. at 182; *see also*, *Moss v. United States*, 323 F.3d 445, 476 (6th Cir. 2003).  Amendment is futile

when the proposed amendment is subject to dismissal under Rule 12(b)(6), that is, when the

proposed amendment fails to state a claim upon which relief may be granted.  *See In re NAHC, Inc.*

*Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002); *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d

299, 307 (6th Cir. 2000); *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420-21 (6th Cir.

2000).  When, as is the case here, the motion to amend is made in response to a motion for summary

judgment, the Court may properly look to the affidavits and other evidence in the record.  In such

a case, "[f]aced with the affidavits and documentary evidence filed by the defendants in support of

summary judgment, the Court cannot assess the proposed amended complaint as if that evidence

does not exist." *Smith v. Chrysler Corp.*, 938 F. Supp. 1406, 1414 (S.D. Ind. 1996).  In such a case,

the proposed amended complaint is futile under Rule 15(a) not only if it would fail to survive a

20

motion to dismiss for failure to state a claim, but also if the amended pleading could not survive a previously filed motion for summary judgment. *See Bauchman v. West High Sch.*, 132 F.3d 542, 561-62 (10th Cir. 1997); *Wilson v. American Trans Air, Inc*., 874 F.2d 386, 392 (7th Cir. 1989); *Smith*, 938 F. Supp. at 1414.

      2.    *Analysis*

Plaintiff seeks leave to amend to provide a more accurate statement of his facts and claims, and to add claims against defendants Berry and Sellers for actions taken after the filing of this suit. The Court should grant plaintiff's motion to the extent he seeks to add new supplemental claims against defendants Berry and Sellers, and deny the motion in all other respects.

To the extent that plaintiff seeks to provide a more accurate statement of his claims, the proposed amended complaint fails to accomplish plaintiff's goal. The only additional allegations which plaintiff makes in the proposed amended complaint relate to his legal mail claims. In these allegations, plaintiff specifically states that the named defendants, rather than "mailroom staff," opened his legal mail. However, as discussed above plaintiff's allegations that "mailroom staff" opened his legal mail are sufficient, at the pleading stage, to allege the personal involvement of the relevant defendants. Thus, these additional allegations are unnecessary. In all other respects, the proposed amended complaint is virtually identical to the original complaint. The proposed amended complaint provides no additional allegations of retaliatory motive, containing only the same conclusory allegations set forth in the original complaint, which are insufficient to allege a causal connection under the *Thaddeus-X* test. Further, any additional allegations relating to plaintiff's media mail claims are irrelevant in light of the fact that plaintiff did not have a right to send confidential, uninspected mail to the media as a matter of law. Thus, leave to amend to clarify

21

plaintiff's claims is either unnecessary or futile.

To the extent that plaintiff seeks leave to amend to add claims arising after the filing of his original complaint, his motion is more appropriately treated as one to supplement the complaint under Rule 15(d). Rule 15(d) provides that "[u]pon motion of a party the court may . . . permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." FED. R. CIV. P. 15(d). As the plain language of the rule indicates, "supplemental pleadings, not amended pleadings, are intended to cover matters occurring after the original complaint was filed." *United States ex rel. Kinney v. Stoltz*, 327 F.3d 671, 673 n.4 (8th Cir. 2003); *see also*, *United States v. Hicks*, 283 F.3d 380, 385 (D.C. Cir. 2002); *Flaherty v. Lang*, 199 F.3d 607, 614 n.3 (2d Cir. 1999). However, this is a distinction without a difference, as the standard for granting leave to supplement under Rule 15(d) is identical to the standard governing leave to amend under Rule 15(a). *See Spies v. Voinovich*, 48 Fed. Appx. 520, 527 (6th Cir. 2002) (citing *Glatt v. Chicago Park Dist.*, 87 F.3d 190, 194 (7th Cir. 1996)).

Defendants argue that leave to supplement the complaint to add these claims would be futile because the claims were not exhausted until after the original complaint was filed. Defendants argument is as follows: the claims asserted in an amended complaint relate back to the filing of the original complaint, and thus the newly asserted claims would be deemed to have been filed on December 10, 2007; as of this date, the newly asserted claims could not have been exhausted, because they did not yet exist; an inmate must complete exhaustion prior to filing the action and may not complete exhaustion during the pendency of the action, *see Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999); plaintiff's newly asserted claims would therefore be subject to dismissal for

22

failure to exhaust administrative remedies; and accordingly leave to amend would be futile.

Defendants' extension of *Freeman*'s prohibition on amending to allege exhaustion completed during the pendency of an action to supplemental claims which are fully exhausted at the time they are proposed would render Rule 15(d) wholly inapplicable to prisoner actions. By definition, any supplemental claim permissible under Rule 15(d) arises after the original complaint is filed, and therefore administrative remedies will never have been exhausted at the time of the filing of the original complaint. Thus, under defendants' argument the PLRA's exhaustion requirement, 42 U.S.C. § 1997e(a) and *Freeman* effectively repeal Rule 15(d) with respect to prisoner actions. Nothing in the language of either § 1997e(a) or *Freeman* compels this result, and had Congress intended this result it would have spoken more clearly on the matter. "'[R]epeals by implication are not favored' and will not be presumed unless the 'intention of the legislation to repeal is clear and manifest.'" *National Ass'n of Home Builders v. Defenders of Wildlife*, 127 S. Ct. 2518, 2532 (2007) (quoting *Watt v. Alaska*, 451 U.S. 259, 267 (1981)); *see also*, *Posadas v. National City Bank of N.Y.*, 296 U.S. 497, 503 (1936) ("The cardinal rule is that repeals by implication are not favored.").

Thus, "[i]n the absence of a clear statement from Congress, [the Court is] reluctant to hold that the PLRA implicitly amends a Federal Rule." *Jackson v. Stinnett*, 102 F.3d 132, 135 (5th Cir. 1996). To be sure, such an implicit amendment may be found if there is an "irreconcilable conflict" between a provision of the PLRA and the federal rule. *See id*. at 136. Such an "irreconcilable conflict" exists between Rule 15(d) and § 1997e(a) only if the Court adopts the illogical position that the supplemental claims were filed before they existed. This is not a case, as in *Freeman*, where plaintiff is attempting to circumvent the requirements of § 1997e(a) by adding facts to show subsequent exhaustion of claims asserted in the original complaint. Rather, plaintiff seeks to add

23

new claims, based on events occurring subsequent to the filing of the original complaint, which appear fully exhausted at the time first asserted in the proposed supplemental complaint. *Freeman* does not prohibit these types of claims, and defendants have pointed to no other decision which does. Accordingly, the Court should conclude that plaintiff is entitled to supplement his complaint to add these apparently exhausted claims.

D.    *Defendants' Motion to Stay Discovery*

Defendants also seek a stay of discovery based on their assertion of a qualified immunity defense. As the Sixth Circuit has explained:

> The purpose of a qualified immunity defense is not only protection from civil damages but protection from the rigors of litigation itself, including the potential disruptiveness of discovery. *See Pierson v. Ray*, 386 U.S. 547 (1967); *Harlow v. Fitzgerald*, 457 U.S. 800, 816 (1982); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). In fact, the Court in *Anderson v. Creighton* emphasized that "[o]ne of the purposes of the *Harlow* qualified immunity standard is to protect public officials from the 'broad-ranging discovery' that can be 'particularly disruptive of effective government.'" *Anderson v. Creighton*, 483 U.S. 635, 646 (1987) (quoting *Harlow*, 457 U.S. at 817). . . .
>
> This Court has held on multiple prior occasions that, when faced with a motion based on qualified immunity, a district court can not avoid ruling on the issue. *See e.g.*, *Skousen v. Brighton High School*, 305 F.3d 520 (6th Cir.2002). In the case of *Skousen v. Brighton High School*, we concluded that a district court committed legal error in dismissing a motion for summary judgement based on qualified immunity solely because discovery was not complete. See *Skousen*, 305 F.3d 520 (6th Cir.2002). We held that, because the defense of qualified immunity is a threshold question, if the defense is properly raised prior to discovery, the district court has a duty to address it. *Id.*
>
>> Rather than dismiss the [summary judgment] motion because discovery was not complete, the district court was required to determine-prior to permitting further discovery-whether [Plaintiff's] complaint alleged the violation of a constitutional right at all, and if so, whether that right was clearly established at the time of the alleged violation.
>
> *Id.* at 527. Only after the court inquires into whether any facts material to Plaintiff's claims are genuinely at issue, and only upon a finding that material facts are in fact in dispute is a court at liberty to hold a motion for summary judgment in abeyance pending additional discovery. *Id.*

24

*Summers v. Leis*, 368 F.3d 881, 886-87 (6th Cir. 2004).

Here, defendants do not allege that they are entitled to qualified immunity because the rights alleged to have been violated were not clearly established. Rather, their assertion of qualified immunity is limited to their argument that they are entitled to summary judgment on the merits of plaintiff's claims. As discussed above, defendants are not entitled to summary judgment on the merits of plaintiff's legal mail and Eighth Amendment claims. Thus, if the Court adopts my recommendation with respect to these claims, the immunity issue will have been resolved and discovery appropriate. Thus, if the Court accepts my recommendation, the Court should also deny defendants' motion to stay discovery.

E.   *Conclusion*

In view of the foregoing, the Court should: (1) deny in part defendants' motion for summary judgment with respect to plaintiff's legal mail and Eighth Amendment claims, and grant in part defendants' motion for summary judgment with respect to plaintiff's retaliation and media mail claims; (2) deny plaintiff's cross-motion for partial summary judgment; (3) grant in part plaintiff's motion to amend to the extent he seeks to add new supplemental claims against defendants Berry and Sellers and deny the motion in all other respects; and (4) deny defendants' motion to stay discovery.

III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health*

*& Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 3/4/09

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record   by electronic means or U.S. Mail on March 4, 2009.

s/Eddrey Butts
Case Manager

26