UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY D. MURPHY,

    Plaintiff,

vs.

CARLA GRENIER, et al.,

    Defendants.
_____/

Civil Action No.
07-CV-15248-DT

HON. BERNARD A. FRIEDMAN

## OPINION AND ORDER GRANTING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is presently before the court on (1) defendants' motion for summary judgment [docket entry 25]; (2) plaintiff's motion for partial summary judgment [docket entry 32]; (3) defendants' motion to stay discovery [docket entry 30]; (4) plaintiff's motion for leave to amend the complaint [docket entry 35]; and (5) plaintiff's motion for appointment of counsel [docket entry 40]. Magistrate Judge Paul Komives has submitted a Report and Recommendation ("R&R") to which both parties have filed objections. The court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).

Plaintiff's 19-page, single-spaced, 135-paragraph complaint is summarized in the R&R and need not be set forth in detail here. For present purposes it suffices to note that plaintiff is suing 14 prison officials at three different Michigan prisons where he was incarcerated from 2004 to 2007. Plaintiff alleges that defendants (1) opened his legal mail outside of his presence; (2) retaliated against him (by, among other things, interfering with his mail, refusing to process his grievances, refusing to provide him with grievance forms, reneging on an agreement to transfer him

from segregation to general population, confiscating his typewriter, refusing to make photocopies for him and giving him library books other than those he requested) for filing grievances, for engaging in "jailhouse lawyer activities," and for filing an earlier lawsuit; (3) failed to provide him with prompt medical attention when he complained about back pain; and (4) prevented him from mailing a letter to "a member of the news media." Plaintiff claims defendants have violated his First, Sixth and Eighth Amendment Rights. He seeks compensatory and punitive damages.

Defendants seek summary judgment as to the first claim on the grounds that they were not personally involved in opening plaintiff's legal mail. The magistrate judge recommends that the court deny defendants' motion as to this claim "because plaintiff's allegations at the pleading stage are sufficient to establish the named defendants' personal involvement, . . ." R&R at 9. Defendants object to this recommendation on the grounds that all of the defendants who allegedly opened plaintiff's legal mail have submitted affidavits specifically averring that they did not do so or that they do no recall doing so. These affidavits are attached as exhibits to defendants' response [docket entries 37 and 38] to plaintiff's motion for leave to amend the complaint.[1]

The six defendants who allegedly opened plaintiff's legal mail are Grenier, Bonnee,

---

[1] Grenier avers that she has "no knowledge of any mishandling of Mr. Murphy's legal mail while he was housed at Kinross Correctional Facility" and that she did not "open, inspect or otherwise censor Mr. Murphy's legal mail." Grenier Aff. ¶¶ 4, 5. Bonnee avers that she "do[es] not recall the plaintiff's situation [or] remember opening any of his mail." Bonnee Aff. ¶ 5. Hodges avers that "KCF staff did not open the plaintiff's legal mail on the dates cited in his Complaint, or on any other time. Mail was processed in accordance with MDOC Policy Directive PD.05.03.118 'Prisoner Mail,' sections DD and EE." Hodges Aff. ¶ 3. Soeltner avers that she was a mail room supervisor and "had very little to do with the daily processing of prisoner mail." Soeltner Aff. ¶ 3. She also "den[ies] disregarding the inmate Murphy's First Amendment rights or retaliating against the inmate." *Id.* ¶ 9. Masker avers that he has "no knowledge of any mishandling, intentional or otherwise, of the plaintiff's mail." Masker Aff. ¶ 3. Cottle likewise avers that he has "no knowledge of any mishandling, intentional or otherwise, of the plaintiff's mail." Cottle Aff. ¶ 3.

Hodges, Soeltner, Masker, and Cottle. *See* Cmplt. ¶¶ 92, 93. A close reading of the complaint, however, reveals that the allegations concerning these defendants' personal involvement are actually paper-thin. Plaintiff alleges only that each of these defendants was "employed as a Mailroom Clerk" at two of the prisons where he was incarcerated and that his legal mail was opened at those prisons on four occasions (twice in 2005, once in 2006, and once in 2007). *Id.* ¶¶ 4-6, 8-10, 36-38, 42. Since plaintiff does not allege that these defendants were the only mail room clerks or that only mail room clerks had access to his mail, it is doubtful whether these allegations sufficiently allege defendants' involvement even "at the pleading stage." Be that as it may, the allegations themselves are irrelevant on summary judgment, which is not concerned with whether plaintiff has stated a claim, but with whether plaintiff has "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Clearly there is no such issue as to the legal mail claim because plaintiff has not rebutted defendants' affidavits. Defendants are entitled to summary judgment on this claim because, even viewing the facts in the light most favorable to plaintiff, a jury could not find that they were personally involved in opening plaintiff's mail outside of his presence. The court shall reject the magistrate judge's contrary recommendation.

The magistrate judge recommends that the court grant summary judgment for defendants on plaintiff's retaliation claims because the complaint fails to allege a causal connection between his "protected conduct" and any "adverse action," as required by *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Over plaintiff's objections, the court shall follow this recommendation for the reasons explained in the R&R. Plaintiff appears to believe that every unpleasant thing that has happened to him at three different prisons over a three-year period was an instance of retaliation for some First Amendment activity he engaged in, be it filing grievances,

3

filing a prior lawsuit, or assisting other inmates with their legal matters, and, further, that he should be permitted to conduct discovery to prove it.  His objections further support the magistrate judge's analysis and demonstrate the tenuousness of this claim – as well as the inappropriateness of permitting plaintiff to engage in discovery before deciding defendants' motion.

In an effort to show causation, plaintiff points to a comment made by Quartermaster Machulis upon plaintiff's arrival at Standish Correctional Facility in May 2007 to the effect that "You're going to enjoy you're [sic] stay here, I'll see to it!"  Pltf's Obj. at 2; Cmplt. ¶ 50.  Although Machulis is not named as a defendant, plaintiff believes he "was actively talking" about a prior federal lawsuit in which plaintiff named him as a defendant and that he somehow has been influencing other prison officials to retaliate against plaintiff on his behalf.[2]  Plaintiff's other alleged instances of retaliation are similarly connected to protected activity by the thinnest threads of suspicion and speculation – e.g., that defendant McIntire, a property room worker at Standish, attempted to confiscate plaintiff's typewriter in retaliation for plaintiff's successful grievance, concluded three weeks earlier, in which plaintiff complained about McIntire's earlier "loss/deprivation of Plaintiff's television"; that defendant Berry, a mail room clerk at Standish, would not allow plaintiff to send a letter to the news media in mid-July 2007 in retaliation for plaintiff's "informal complaints," in late May 2007, "complaining about my newspapers"; that the

---

[2] While plaintiff does not provide any information about this earlier lawsuit, a search of the court's records reveals one case in which plaintiff sued Machulis and three other prison officials. *See Murphy v. Hoskins, et al.*, 89-CV-40366 (E.D. Mich.).  The case is so old that only the docket sheet, but not the docket entries, can be viewed electronically.  Nonetheless, the docket sheet indicates that the complaint was filed in December 1989, that minimal discovery was conducted, and that the court granted summary judgment for defendants in March 1992, i.e., more than *15 years* before Machulis allegedly began orchestrating the retaliation alleged in the present case.

prison librarian at Standish, defendant Valone, must have been retaliating against him (by not making photocopies and by giving plaintiff books other than those he requested) for the Machulis lawsuit because "given the evidence that Machulis had been telling other SMF staff of Plaintiff's prior litigation against him, it can be inferred that Machulis also told Valone of same." Pltf's Obj. at 3-4. These baseless assertions do not suffice to defeat defendants' summary judgment motion.

The magistrate judge next recommends that defendants' summary judgment motion be denied as to plaintiff's medical claim. The gist of this claim is that on July 7, 2007, plaintiff complained of back pain, but that he was not seen by a doctor until August 21, 2007. Cmplt. ¶¶ 69, 89. Plaintiff claims defendants Winn and Svensen, prison nurses who saw him on July 11, August 3, and August 16, violated his Eighth Amendment right under *Estelle v. Gamble*, 429 U.S. 97 (1976), to prompt medical treatment. *Id.* ¶¶ 70, 84, 88, 123-130. The R&R recommends that this claim be allowed to proceed because plaintiff alleges he had a serious medical need and that defendants were deliberately indifferent to it by making him wait 45 days before being examined by a doctor.

Defendants object to this recommendation on the grounds that they responded promptly to plaintiff's complaints, evaluated him, gave him Ibuprofen, advised him on the proper care of his back, and attempted to schedule a prompt appointment with the prison physician. Specifically, Winn avers:

> 3. I saw Mr. Murphy in the clinic in housing unit 2 at 9010 on July 11, 2007. Mr. Murphy stated that he had previous back problems approximately ten months ago. He said that at that time he was taking medication for the problem but did not like the side effects so he had them stop his medication. He stated to me that he started to have pain again in his back and that he wanted his medication re-started. After evaluating Mr. Murphy I determined that he needed further evaluation by the physician. I scheduled him an appointment

5

> with the physician on July 16, 2007.
>
> 4. On July 14, 2007 Mr. Murphy asked when he would be seeing the physician and I told him he was scheduled to see the physician on July 16, 2007. Mr. Murphy made no mention regarding pain and was moving about his cell without difficulty.
>
> 5. I processed a kite received from Mr. Murphy dated August 12, 2007 which was received in health care on August 14, 2007. Mr. Murphy's complaint was he was still having back pain and the medication he was getting was not helping. I scheduled him for a call out on August 16, 2007.

Svensen avers:

> 4. The plaintiff . . . appears to have initiated a Health Care Services Request form on July 7, 2007. I am unaware of the specific contents of this Request form; however, one was received and processed on July 8, 2007.
>
> 5. Prisoner Murphy was scheduled for nursing on or about July 11, 2007. He was seen by nursing on July 11, 2007 and scheduled for the doctor for a routine nurse referral (RNR).
>
> \* \* \*
>
> 8. I saw prisoner Murphy on August 16, 2007 as the result of an August 12, 2007 Health Care Services Request and scheduled the prisoner with the doctor. His complaint was back pain for the last ten months.
>
> 9. On August 21, 2007, the inmate was seen by the doctor, and he indicated he had back pain for the last eleven months. A medication, Flexaril, was ordered for a two week trial. I do not see where x-rays or an MRI were ordered. The doctor also ordered a follow-up appointment and the inmate saw the doctor again on September 5, 2007. The Flexaril order was extended another six months.
>
> 10. When an RN evaluated prisoner Murphy in the Health Nursing callout for a kited complaint of back pain, he was scheduled with the doctor, both times.

Dfts' Mot. for Summ. Jmt., Exs. L, M.

6

In addition, defendants have submitted plaintiff's medical records as Attachment A to their objections. This evidence, which the magistrate judge did not have the benefit of considering, shows the following chronology of events. Plaintiff's "kite" complaining of back pain, dated July 7, 2007, was received by Jessica Pausits, RN, the next day. Plaintiff was scheduled for sick call "on or about 07/11/2007." Plaintiff was seen by defendant Winn on July 11, 2007. Plaintiff told Winn he had lumbosacral pain, six on the pain scale, and that he had had the same problem ten months earlier. Winn examined plaintiff, found his range of motion to be poor and his gait to be unsteady, and assessed the level of distress as "moderate." Winn gave plaintiff Ibuprofen (200 mg, two to three times per day, as needed) and an "education handout" concerning the proper care of one's back. Plaintiff was scheduled "to return on 07/16/2007 with MSP [medical services provider]."

For reasons not indicated in the medical records, the July 16 appointment did not take place. However, on July 25, 2007, and again on August 3, 2007, plaintiff's Ibuprofen prescription was increased to 600 mg, three times per day. The order was written by defendant Svensen, apparently at the direction of the prison physician, John Urban.

On August 14, 2007, defendant Winn processed another kite, dated August 12, 2007, in which plaintiff complained that he was continuing to have back pain and "meds not helping." Plaintiff was scheduled for a sick call for August 16.

On August 16, 2007, plaintiff was seen by defendant Svensen. His findings were essentially the same as those made by defendant Winn on July 11, 2007. Svensen suggested that plaintiff be referred to the medical services provider.

On August 21, 2007, plaintiff was seen by Dr. John Urban, D.O., who diagnosed

7

"low back pain" and prescribed a muscle relaxant (Flexeril, 10 mg). Physical examination was normal (including coordination, balance, gait, cranial nerves, reflexes, strength, and seated straight leg raising) except for a finding of "[p]ain over lower back L3-4 area with spasms."

The R&R correctly notes that for this claim to prevail plaintiff must show both that he had a serious medical need and that defendants were deliberately indifferent to it. The legal standards were recently articulated by the Sixth Circuit as follows:

> To succeed on his Eighth Amendment claim, Dodson must be able to prove "'deliberate indifference' to his 'serious' medical needs." *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (quoting *Estelle*, 429 U.S. at 106, 97 S.Ct. 285). An Eighth Amendment claim of denial of medical care has both objective and subjective components, the objective component requiring proof of a "sufficiently serious" medical need, and the subjective component requiring proof of "a sufficiently culpable state of mind in denying medical care." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Estelle*, 429 U.S. at 104, 97 S.Ct. 285; and *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Blackmore*, 390 F.3d at 897 (quoting *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 208 (1st Cir.1990) (emphasis in original)). With regard to the subjective component:
>
>> [T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs is essential to a finding of deliberate indifference.
>
> *Blackmore*, 390 F.3d at 896 (quoting *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970; and *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir.1994)) (internal quotations omitted).

*Dodson v. Wilkinson*, 304 Fed.Appx. 434, 438-39 (6th Cir. 2008). Expressed another way,

> The standard includes both objective and subjective components. First, the deprivation of Eighth Amendment rights must be "sufficiently serious" such that the prison officials' acts or omissions objectively result in the denial of "the minimal civilized measure of life's necessities." *Id.* at 834, 114 S.Ct. 1970 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991), and *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)). Second, the prison officials must have acted with a "sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298, 111 S.Ct. 2321. In other words, a prison official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir.1997) (quoting *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970).

*Jarriett v. Wilson*, 162 Fed.Appx. 394, 402 (6th Cir. 2005).

In the present case, there is no genuine issue as to either the objective or the subjective component of plaintiff's *Estelle* claim. As a matter of law, plaintiff's back pain was not a "serious medical need" under the applicable legal standards. The medical records show that plaintiff told Winn and Svensen he had had the same back pain ten months earlier and that it had been treated with pain medication. The objective findings, both by defendants and subsequently by Dr. Urban, showed nothing abnormal except for muscle spasms. Plaintiff's balance was normal, his gait was at most "unsteady," and he was not in acute distress. Like millions of other people, plaintiff had low back pain, plain and simple. Certainly there is nothing to suggest that plaintiff's back condition was so dire "that even a lay person would easily recognize the necessity for a doctor's attention,"*Blackmore*, 390 F.3d at 897, or that a failure to provide immediate attention by a physician would pose "an excessive risk to inmate health or safety." *Woods*, 110 F.3d at 1222.

Plaintiff's proof of the subjective component of this claim is non-existent. First, as plaintiff did not have a serious medical need, it cannot be said that defendants were "aware of facts

9

from which the inference could be drawn that a substantial risk of serious harm exists." *Id.* at 896. Second, defendants obviously were not "deliberately indifferent" to plaintiff's complaints. As the medical records show, defendants responded to plaintiff's complaints by examining him, giving him Ibuprofen, giving him written information about caring for his back, and scheduling an appointment with the prison physician. Plaintiff first complained of pain on July 7, 2007, and defendant Winn examined plaintiff and gave him Ibuprofen four days later. When plaintiff did not see a physician and sent a second kite on August 12, 2007, defendant Svensen examined plaintiff four days later. Plaintiff saw a physician – who did nothing more than defendants already had done, except to prescribe a muscle relaxant – 45 days after he first complained. Under these circumstances, no jury could find that defendants were deliberately indifferent. No jury could find that plaintiff was denied "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347. Defendants are entitled to summary judgment on this claim.

The magistrate judge next recommends that the court grant summary judgment for defendants on plaintiff's "media mail" claim. This claim is based on the allegation that defendants Berry and Sellers, mail room clerks at Standish, would not mail plaintiff's "sealed and confidential letter to a member of the news media." Cmplt. ¶¶ 75, 77, 132. The magistrate judge suggests that summary judgment should be granted for defendants because "[u]nlike legal mail, correspondence with members of the media is not afforded privileged status, and thus may be subjected to the same inspection rules a prison applies to regular incoming and outgoing mail." R&R at 17. Plaintiff objects on the grounds that cases other than those cited in the R&R have found that prisoners have a First Amendment "right to send sealed, uncensored and/or unhindered (confidential) outgoing mail to members of the Media." Pltf's Obj. at 7.

10

Plaintiff correctly notes that in *Burton v. Foltz*, 599 F. Supp. 114, 116 (E.D. Mich. 1984), this court held that "persons in custody and the media have a constitutional right to have mail to members of the media sent unopened." Plaintiff cites no Sixth Circuit cases on this issue, and the court is not aware of any, but for present purposes the court shall assume the existence of this First Amendment right. Nonetheless, it is clear from defendants' affidavits that the temporary interference with plaintiff's right to send the letter in question was the result of negligence, which is not actionable under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 330-33 (1986) ("lack of due care" insufficient to sustain a due process claim); *Barker v. Sowders*, 1999 WL 427170, at *1 (6th Cir. June 15, 1999) (negligent missorting of mail insufficient to establish a constitutional violation).

Defendant Berry avers that plaintiff's letter, addressed to the Muskegon Chronicle, was rejected the first time plaintiff presented it, on July 17, 2007, due to lack of postage. "After the mail had been metered, it was rejected by the Mailroom as improperly sealed segregation inmate mail." Berry Aff. ¶ 6. Plaintiff filed a grievance. The response, from Record Office Supervisor J. Forshee, was that "the mail should have been sent out if addressed to the Editor of the Michigan [sic] Chronicle. Forshee informed the Mailroom staff to be more careful in checking segregation outgoing mail and who the mail is being sent/addressed to in the future to prevent this from happening again." *Id.* ¶ 7. Similarly, defendant Sellers avers that she "inadvertently made a mistake in identifying the mail as segregation mail to be left unsealed" and that after plaintiff filed a grievance "I was instructed by the Supervisor to be more careful in the future." Sellers Aff. ¶ 8. Forshee's grievance response, dated August 6, 2007, a copy of which is attached to Sellers' affidavit, states: "In researching the prisoners [sic] complaint, it appears the prisoner is correct. His mail, once

11

properly metered the second time around, should have been sent out if addressed to the Editor of the Muskegon Chronicle. I have informed mailroom staff to be more careful in checking segregation outgoing mail and who the mail is being sent/addressed to in the future to prevent this from happening again."

Plaintiff has submitted nothing to suggest that Sellers' failure to send his letter to the Muskegon Chronicle (once proper postage was applied) was anything more than a one-time, negligent occurrence, as both defendants have averred. Nor does plaintiff dispute the fact that the error was quickly remedied, within days of his filing a grievance. Nor does plaintiff allege that he has had any difficulty since that time in sending mail to the media. As it is not genuinely disputed that his July 17, 2007, letter to the Muskegon Chronicle was not processed due to simple negligence on Sellers' part, defendants are entitled to summary judgment on this claim.

The magistrate judge recommends that the court grant in part and deny in part plaintiff's motion for leave to file an amended complaint. The court rejects this recommendation and shall deny the motion *in toto* because plaintiff does not explain the nature of the proposed amendment. Rather, the motion states that plaintiff seeks "to provide more definite and/or more accurate statement of facts and claims" and to allege additional acts of retaliation. Plaintiff has attached the proposed amended complaint – 26 pages and 127 paragraphs long – to the motion, apparently in the expectation that the court will compare it to the original, paragraph by paragraph, to find the changes and determine whether the amendment is proper under Fed. R. Civ. P. 15 and *Foman v. Davis*, 371 U.S. 178 (1962). The court is not inclined to undertake this investigation. It is plaintiff's burden to show he is entitled to the requested relief, and he has not met this burden.

For the reasons stated above,

12

IT IS ORDERED that Magistrate Judge Komives' Report and Recommendation of March 4, 2009, is accepted in part and rejected in part, as explained above.

IT IS FURTHER ORDERED that defendants' motion for summary judgment [docket entry 25] is granted.

IT IS FURTHER ORDERED that plaintiff's motion for partial summary judgment [docket entry 32] is denied.

IT IS FURTHER ORDERED that defendants' motion to stay discovery [docket entry 30] is denied as moot.

IT IS FURTHER ORDERED that plaintiff's motion for leave to amend the complaint [docket entry 35] is denied.

IT IS FURTHER ORDERED that plaintiff's motion for appointment of counsel [docket entry 40] is denied as moot.

S/Bernard A. Friedman_____
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated:  April 20, 2009
        Detroit, Michigan

13